UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
COPTERLINE OY,

                    Plaintiff,

  -against-

SIKORSKY AIRCRAFT CORP. and
HELICOPTER SUPPORT, INC.,

                    Defendants.
---------------------------------------------------x

MEMORANDUM AND ORDER
06 CV 6787 (ILG)

GLASSER, United States Senior District Judge:

# INTRODUCTION

Plaintiff Copterline Oy ("Copterline" or "Plaintiff") filed this action against defendants Sikorsky Aircraft Corporation ("Sikorsky") and Helicopter Support, Inc. ("HSI"), (collectively, "Defendants"), for breach of express warranty, implied warranty, negligence, gross negligence, and failure to warn relating to the sale of a helicopter component. Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, to transfer the action to the District of Connecticut pursuant to 28 U.S.C. § 1404(a), and to stay discovery pending the resolution of these motions. For the reasons explained below, this Court finds that it lacks personal jurisdiction over defendant HSI, transfers the case to the District of Connecticut pursuant to 28 U.S.C. § 1406(a), and denies the motion to stay as moot.[1]

---

[1] The Court denies Defendants' motion for leave to amend their Reply Brief. The additional case law offered by Defendants is inherent in the original submissions and an amendment thereto is therefore superfluous. Also, the mistake of fact corrected by Defendants would not alter the Court's decision.

1

# BACKGROUND

This action arises out of the manufacture and sale of a helicopter component.[2] Copterline is a Finnish corporation, having its principal place of business in Helsinki, Finland. See Compl. ¶ 3. At the time the action arose, Copterline operated a passenger helicopter flight service between Helsinki, Finland and Tallinn, Estonia. See id. Sikorsky is a designer, manufacturer, and seller of helicopters and component parts with its principal place of business in Stratford, Connecticut. See Affirmation of Garret J. Fitzpatrick ("Fitzpatrick Aff."), dated April 5, 2007, ¶ 3; Defs. Br. at 11. HSI is a wholly owned subsidiary of Sikorsky with its principal place of business in Trumbull, Connecticut. See id. ¶ 4; Affidavit of Christopher J. Bogan ("Bogan Aff."), dated March 26, 2007, ¶ 4.

## A. The Accident

On August 10, 2005, one of the Sikorsky S-76 C+ helicopters that Copterline flew took off from Tallin bound for Helsinki. See Compl. ¶ 15. As the helicopter reached 1,500 feet, it experienced a loss of pilot control that Copterline describes as a "pitching up of the helicopter nose, a roll to the left and a series of rotations, culminating in the helicopter violently plunging into the Baltic Sea." Id. ¶ 16. All twelve passengers and two crew members aboard the aircraft died. See id. The wreckage was recovered by the Estonian government, and an investigation was conducted by authorities from Finland, Estonia, the United Kingdom, and the United States. See Fitzpatrick Aff. ¶ 45-46.

---

[2] The Court will set forth only the facts as they relate to Defendants' motion to dismiss for lack of personal jurisdiction, and not as to the motion to transfer pursuant to 28 U.S.C. § 1404(a) because this Court need not reach the merits of that motion.

### B. The Sale

On September 1, 1999, Copterline and Sikorsky entered into a contract whereby Sikorsky provided two new helicopters to Copterline, including the one involved in the crash. See id. ¶ 22. Between 1999 and 2002, HSI provided several spare parts to Copterline pursuant to the 1999 contract.[3] See id. ¶ 25. On August 13, 2003, Copterline sent an e-mail to HSI requesting a quotation for a replacement of the main rotor servo actuator (the "actuator") for the helicopter which eventually crashed. See Compl. ¶ 11; Declaration of Sami Visakko ("Visakko Decl."), dated May 10, 2007, ¶ 8. That same day, HSI provided a quote for the price of the actuator. See Visakko Decl. ¶ 10. Copterline confirmed the price of the order via e-mail, and requested that HSI contact Excel Global, a freight forwarding company located in Jamaica, New York, to arrange for the transport of the actuator to Finland. See id. ¶ 10. On August 14, 2003, HSI shipped the actuator to Excel Global as requested by Copterline. See id., Ex. 6. The sales invoice certified that the actuator was "manufactured in accordance with the applicable specifications and approved data." Id.

### C. The Complaint

Copterline alleges that the crash was caused by this "defectively designed and defectively manufactured component sold by HSI to Copterline." See Compl. ¶ 16. In the Complaint, Copterline states that the actuator "controls the direction of the flight of a helicopter by changing the pitch angle of the rotor blades. It operates by the

---

[3] Defendants offer the forum selection clause in the 1999 contract to support their contention that the case should properly be transferred to Connecticut because, *inter alia*, Connecticut law should apply in this case. Copterline disputes that the purchase of the actuator was made using the spare parts credit under the original 1999 contract, and alleges that the actuator sale was a "stand-alone transaction." Pl. Br. at 6; Visakko Decl. ¶ 14.

movement of a piston, that is powered by a hydraulic system." Id. Copterline asserts that the actuator is required under federal safety standards to be "fail safe," and that this particular actuator was defective because "the plasma coating on the piston head . . . had flaked off, clogging the servo actuator's control valve's return flow ports and causing a blockage of the servo actuator[. This] caused an uncommanded extension of the servo actuator, thereby causing the main rotor to stall, leading the nose of the helicopter to pitch up abruptly and the helicopter to roll to the left." Id. ¶ 20. Among other claims, Count I of the Complaint pleads an action for breach of express warranty, claiming that HSI "expressly warranted that the servo actuator was manufactured in accordance with the applicable specification and approved data," and that HSI "failed to meet this express contractual warranty, inasmuch as it was not a fail-safe component and the servo actuator was defective." Id. ¶¶ 25-26.

### D. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Defendants argue that this Court lacks personal jurisdiction over HSI. Defendants assert, and Copterline does not contest, that HSI is not licensed or authorized to do business in New York, HSI does not have a New York agent for service of process, and HSI does not maintain any offices, manufacturing facilities, distribution facilities, sales facilities, warehouse facilities, place of business, agents, or employees in New York. See id. ¶¶ 14-16. The parties also agree that HSI does not possess any bank accounts, assets, phone listings, or mailing addresses in New York. See id. ¶ 19. Defendants state that the dollar value of HSI's sales of goods and services to customers operating in New York for the years 2002 through 2006 is as follows: approximately $4.724 million in 2002 (2.65% of HSI's gross revenue), $2.381 million in 2003 (1.16% of

4

HSI's gross revenue), $4.562 million in 2004 (2.20% of HSI's gross revenue), $5.645 million in 2005 (2.30% of HSI's gross revenue), and $9.439 million in 2006 (3.05% of HSI's gross revenue). See id. ¶ 20.

In opposition to the motion, Copterline argues that HSI conducted a substantial amount of commerce in New York, which includes both purchases and sales in New York and the use of J.F.K. International Airport to ship its goods. See Pl. Br. at 5. Copterline also alleges that HSI's personnel frequently traveled to New York to call on customers, provide on-site maintenance, and participate in training. See id. at 13. It also argues that the contract to deliver the actuator to New York provides a basis for specific personal jurisdiction over HSI. See id. at 11-12.

## DISCUSSION

### A. Standard of Review

Fed. R. Civ. P. 12(b)(2) requires the dismissal of any action against a defendant over which it lacks personal jurisdiction. The plaintiff bears the burden of showing that the court maintains jurisdiction over the defendant. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). If discovery has yet to commence in a case, the plaintiff may defeat a motion to dismiss by showing legally sufficient allegations of jurisdiction. Id. (citing Ball v. Metalurgie Hoboken-Overpelt S.A., 902 F.2d 194, 197 (2d Cir. 1990)). If the court conducts an evidentiary hearing, then the plaintiff must prove jurisdiction over the defendant by a preponderance of the evidence. Ball, 902 F.2d at 197. However, if the parties have conducted extensive discovery regarding possible contacts with the forum state, but the court declines to conduct an evidentiary hearing, then the plaintiff's "*prima facie* showing, necessary to

defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." Id. Because the Court did not hold a hearing or a trial on the merits, all pleadings and affidavits must be construed and all ambiguities resolved in favor of Copterline. See Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 567 (S.D.N.Y. 2006).

"The amenability of a foreign corporation to suit in a federal court in a diversity action . . . is determined in accordance with the law of the state where the court sits . . . ." Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 183 (2d Cir. 1998) (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963)). The inquiry into whether a New York federal court has personal jurisdiction over a particular defendant is subject to a two-part test: "(1) the Court must determine whether New York Civil Practice Law and Rule . . . sections 301 or 302 provide a basis for personal jurisdiction, and (2) if they do, the Court must then conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction over the defendant would offend due process pursuant to International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny." En Vogue v. UK Optical Ltd., 843 F. Supp. 838, 842 (E.D.N.Y. 1994).

### B.  C.P.L.R. 302(a)(1):  Transacting Business or Contracting to Supply Goods or Services in New York

A non-resident defendant may be hailed into court based on New York's long-arm statute, C.P.L.R. § 302 ("Section 302"). The statute provides that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . .

. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." C.P.L.R. § 302(a)(1).[4]  Section 302(a)(1) does not require any physical presence in New York.  Jin v. EBI, Inc., 05 CV 4201 (NGG), 2006 U.S. Dist. LEXIS 75390, at *14 (E.D.N.Y. Oct. 17, 2006).  Nonetheless, the action spawning suit must arise from the transaction of business or the contract to supply goods or services in New York such that there is a sufficient nexus between the activity and the cause of action.  See Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983) ("We agree with the New York courts' interpretation of Section 302(1)(a) which requires a direct relation between the cause of action and the in-state conduct as an important condition of acquiring jurisdiction over the non-domiciliary defendant." (internal citation and quotes omitted)); Rogers v. HSN Direct Joint Venture, 97 Civ. 7710 (LLS), 1999 U.S. Dist. LEXIS 7501, at *4 (S.D.N.Y. May 19, 1999) ("[T]here must also be . . . a substantial relationship between the transaction [or contract] and the claim asserted." (quotation omitted)).

Section 302(a)(1) is only applicable where "the claim is a direct consequence of purposeful New York activity and the benefits and protections of New York law have been utilized by the manufacturer."  Avato v. Walker Mfg. Co., 706 F. Supp. 300, 302 (S.D.N.Y. 1989) (quotation omitted).  The Second Circuit has described this requirement as "essential to the maintenance of a suit against a non-domiciliary under CPLR 302"

---

[4] Prior to 1979, Section 302(a)(1) only applied to foreign defendants who "transact[ed] business within the state."  C.P.L.R. § 302(a)(1).  The courts uniformly held that the mere shipment of goods into New York by a foreign defendant could not bring that defendant under the "transacting business" clause of Section 302.  See En Vogue, 843 F. Supp. at 842.  As a result, there emerged a "gap of personal jurisdiction in cases where a contract was made outside of New York for the shipment of goods into New York, but where the non-domiciliary seller or contracting party subsequently breached the contract by failing to perform."  Id. at 842-43 (citing A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 80 (2d Cir. 1993)).  As a result, Section 302 was amended to subject foreign defendants to jurisdiction based on a single contract to supply goods or services in the state.

because "the existence of some articulable nexus between the business transacted and the cause of action sued upon . . . . is th[e] basic requirement that differentiates the long-arm authority conferred by CPLR 302[(a)(1)] from the more traditional authority of the New York courts under CPLR 301 . . . ." Beacon, 715 F.2d at 764 (quotation omitted).[5] The "requirement of a substantial relationship between act and injury applies with equal force to both clauses of § 302(a)(1)." Avato, 706 F. Supp. at 302.

### i. Transacting Business Under Section 302(a)(1)[6]

"Transacting business" is defined as "purposeful activity – 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines v. Walker, No. 04 CV 3924, 2007 U.S. App. LEXIS 15152, at *20 (2d Cir. June 26, 2007) (quotation omitted). "Transacting business" is "not synonymous with 'doing business' as required by CPLR § 301. 'Transacting' is a term of art that is only relevant for jurisdictional purposes when the plaintiff's suit is related to the transaction in question." In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 403, 408 (S.D.N.Y. 2002).

To determine whether a foreign corporation is transacting business in New York, the court must assess the "totality" of the defendant's activities in New York, Best Van Lines, 2007 U.S. App. LEXIS 15152, at *19, keeping in mind that it is the "nature and

---

[5] As the Second Circuit explained, Section 302 was enacted in response to International Shoe, and thus, New York decisions "tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful[] avail[ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines, 2007 U.S. App. LEXIS 15152, at *21 (quotation omitted) (alteration in original).

[6] Copterline argues that jurisdiction is rooted in the "contracts anywhere to supply goods" provision of Section 302(a)(1). However, this Court will consider whether jurisdiction may also be supported under the "transacting business" clause of Section 302(a)(1) based on the Second Circuit's recent opinion in Best Van Lines v. Walker, No. 04 CV 3924, 2007 U.S. App. LEXIS 15152 (2d Cir. June 26, 2007).

quality, and not the amount of New York contacts [which] must be considered by the court." Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1051 (S.D.N.Y. 1987) (quotation omitted) (alteration in original). The "[p]rimary factors to consider include the physical presence of defendant in New York, the risk of loss as it affects the New York transaction, and the extent to which the contract is performed in New York." Id. Specifically, in a breach of contract action, "the proper inquiry . . . is 'whether looking at the 'totality' of the defendant's activities within the forum', purposeful acts have been performed in New York by the foreign corporation in relation to the contract, 'albeit preliminary or *subsequent* to its execution.'" Id. (quoting Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975)) (alteration in original).

HSI never purposefully availed itself of the benefits and privileges of New York law in relation to its sale of the actuator. The price quotation for the actuator was submitted via the internet in Connecticut. The e-mail purchase order was completed by Copterline via the internet in Finland and was received by HSI in Connecticut. No part of the transaction took place in New York, and none of HSI's New York sales was in any way related to the actuator transaction.[7] Nor does HSI's responsibility for the transportation of the actuator from Connecticut to New York "rise[] to the level of meaningful or purposeful activity" because "transportation from New York, while a necessary link, was . . . of minor or accidental importance." Galgay v. Bulletin Co., 504 F.2d 1062, 1065 (2d Cir. 1974).

---

[7] As discussed below, HSI sells its products in New York, but its sales are not substantial enough to subject it to personal jurisdiction in New York under C.P.L.R. § 301.

### ii.   Contracting to Provide Goods or Services Under Section 302(a)(1)

Copterline maintains that HSI "contracted to supply the [actuator] to Copterline in New York, and Copterline's claims arise out of the defective condition of that [actuator]." Pl. Br. at 10.  This is not accurate.  Copterline, a Finnish corporation, bought a replacement part from HSI, a Connecticut corporation, for *use in Finland*.[8] HSI simply complied with Copterline's direction to route the actuator to it in Finland via its designated freight forwarder in New York.  This was not a contract to supply goods in New York, but rather a contract to supply goods to Copterline in Finland.  New York was merely a pit stop en route to Finland.  The actuator was never removed from its packaging or used in New York; it merely changed hands from HSI to Copterline's chosen freight forwarder in New York.[9]  Plaintiff may not create jurisdiction in a state by requiring Defendant to use a particular freight forwarder in that state.

As explained by the Second Circuit in Beacon, the "contracts" provision of Section 302(a)(1) is "typically invoked for a cause of action against a defendant who breaches a

---

[8] None of the cases cited by Copterline are applicable to this case because the contracts in those cases were performed in New York.  See Boehner v. Heise, 410 F. Supp. 2d 228, 237 (S.D.N.Y. 2006) (contract to supply seals of authenticity to New York warehouse to attach to ginseng products); Micro-Assist, Inc. v. Cherry Comm'ns, Inc., 961 F. Supp. 462, 463 (E.D.N.Y. 1997) (contract to install telephone equipment in Manhattan); Davidson Pipe Supply Co. v. G.W. Sales, Inc., 685 F. Supp. 332, 334 (E.D.N.Y. 1988) (contract to supply goods to be installed at a construction site on Rikers Island, New York).

[9] Even if there is arguably a nexus between the action for breach of warranty and the supply contract, Section 302(a)(1) would still be inapplicable because the "direct relationship" between the cause of action and the contract assumes that New York will be the final recipient of such goods, which it was not in this case.  Cf. Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co., 75 Fed. Appx. 824, 826 (2d Cir. 2003) (finding Section 302(a)(1) jurisdiction over a non-domiciliary who shipped allegedly defective chemicals into New York for use in a New York factory pursuant to a supply contract); Glens Falls Cement Co. v. Severn Coal Co., No. 89-CV-1092, 1990 U.S. Dist. LEXIS 1609, at *14-15 (N.D.N.Y. Feb. 14, 1990) (finding jurisdiction because the action for breach of warranty arose out of the delivery of defective coal pursuant to a supply contract to provide coal meeting certain chemical specifications for use in New York by a New York coal company).  As explained in Laumann Mfg. Corp. v. Castings USA, Inc., the legislature intended the word "supply" to be "used in its common sense meaning: 'to provide for goods to enter and be used in New York.'" 913 F. Supp. 712, 717 (E.D.N.Y. 1996) (quoting Foster Importing Co. v. Creative Foods Imps., Ltd., No. 83 Civ. 8124-CSH, 1984 U.S. Dist. LEXIS 18647, at *2 (S.D.N.Y. Mar. 14, 1984)).

contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services *in* New York." 715 F.2d at 764 (internal citations omitted) (emphasis added). Here, Copterline's cause of action is not predicated on HSI's failure to supply goods or services in New York; rather, the cause of action is for breach of express warranty for failure to manufacture the actuator in accordance with safety standards. Because the action for breach of warranty is not a "direct consequence of purposeful New York activity and the [utilization of the] benefits and protections of New York law," Section 302(a)(1) is not applicable. Avato, 706 F. Supp. at 302 (quotation omitted).

### C.     C.P.L.R. § 301:  "Doing Business" in New York

Despite the fact that Copterline never mentions C.P.L.R. § 301 ("Section 301") in its opposition brief, to the extent that Copterline's papers may imply that Section 301 is applicable, the law in this Circuit compels the conclusion that HSI was not "doing business" in New York.[10]

Section 301 states: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." C.P.L.R. § 301. Before the statute was enacted in 1963, New York courts could subject a foreign corporation to personal jurisdiction if it was "doing business" in the state. LG Adam Textiles, Ltd. v. Today's Man, Inc., No. 79 Civ. 7072 (LWP), 1980 U.S. Dist. LEXIS 13983, at *5 (S.D.N.Y. Oct. 1, 1980); see also Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular Inc., 05 Civ. 9994 (KMW), 2007 U.S. Dist. LEXIS 17163, at *6-7 (S.D.N.Y. Mar. 9, 2007) ("The enactment of the long-arm statute, CPLR § 302, did not eliminate any of the

---

[10] HSI moved to dismiss on this basis, so the Court will accordingly discuss the application of Section 301 to the facts presented.

traditional bases for general personal jurisdiction, such as physical presence, consent, domicile, or business activity."). Thus, Section 301 continues to vest New York courts with jurisdiction over non-resident defendants who "do business" in the state at the time a lawsuit is filed (as opposed to when the claim arose). Zipper v. Nichtern, 03-CV-5796 (NGG) (VVP), 2007 U.S. Dist. LEXIS 24761, at *11 (E.D.N.Y. Mar. 30, 2007).

A corporation is "doing business and is therefore present in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (quotation omitted); see also Beacon, 715 F.2d at 762 (requiring defendant to be "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [her] 'presence' in this jurisdiction." (quotation omitted) (alteration in original)); Landoil Res. Corp. v. Alexander & Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (requiring a showing of "continuous, permanent and substantial activity" to constitute "doing business" in New York). The "doing business" test is a "simple pragmatic one, which is necessarily fact sensitive because each case is dependent on its own particular circumstances." Landoil, 918 F.2d at 1043 (internal citation and quotes omitted). Courts focus on several factors to determine whether a foreign corporation is "doing business," which include the existence of an office in New York, the solicitation of business in New York, the presence of bank accounts or other property in New York, the presence of employees or agents in New York, and the presence of phone listings in New York. See id.; Wiwa, 226 F.3d at 98. Mere solicitation in the state will not provide the requisite presence necessary under

12

Section 301. As the Second Circuit wrote:

> [T]he solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services. On the other hand, if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist. Under this "solicitation-plus" rule, once solicitation is found in any substantial degree very little more is necessary to a conclusion of "doing business."

Landoil, 918 F.2d at 1043-44 (internal citations and quotes omitted).

It is undisputed that HSI does not maintain any offices, mailing addresses, telephone numbers, or bank accounts in New York, and that it does not employ any personnel in New York. HSI does, however, sell its products in New York. In order for these sales to establish sufficient solicitation under the "solicitation-plus" test, then the "solicitation in New York . . . [must first] rise to the level of 'substantial solicitation' needed to trigger the 'solicitation-plus' rule . . . ." Overseas Media, 407 F. Supp. 2d at 569 (quotation omitted); see Aquascutum of London, Inc. v. S.S. Am. Champion, 426 F.2d 205, 211 (2d Cir. 1970); Dunn v. S. Charters, Inc., 506 F. Supp. 564, 567 (E.D.N.Y. 1981). Courts consider the percentage of a company's overall revenue that is attributable to its New York business in determining whether solicitation is substantial and continuous. See Overseas Media, 407 F. Supp. 2d at 569. Courts will not find substantial solicitation where such sales comprise an "insubstantial portion of a defendant's total sales." New World, 612 F. Supp. at 172.

During 2006, the year in which Copterline filed suit, New York sales constituted 3.05 percent of HSI's gross revenue.[11] District courts in this Circuit agree that where a

---

[11] Copterline argues that in 2006, HSI's commerce with New York approximated $25 million, which includes both purchases and sales. However, purchases are not considered pursuant to a forum contacts counting analysis. See Zipper, 2007 U.S. Dist. LEXIS 24761, at *20 ("Purchases in New York that permit the purchaser to 'do business' elsewhere . . . do not constitute 'doing business' in New York.");

foreign corporation derives less than five percent of its overall revenue from sales in New York, such sales are not substantial enough to force a foreign defendant to litigate in New York. See, e.g., Indem. Ins. Co. of N. Am. v. K-Line Am., Inc., 06 Civ. 0615 (BSJ), 2007 U.S. Dist. LEXIS 43567, at *21 (S.D.N.Y. June 13, 2007) (2.2-2.7 percent of total sales "do not constitute[] substantial solicitation."); Zipper, 2007 U.S. Dist. LEXIS 24761, at *18-19 (collecting cases); Gross v. Bare Escentuals, Inc., 03 Civ. 3089 (RLC), 2005 U.S. Dist. LEXIS 6570, at *14 (S.D.N.Y. Apr. 8, 2005) (3-4 percent of total product sales "insufficient to constitute substantial solicitation . . . ."); Hennigan v. Taser Int'l Inc., 00 Civ. 2981 (MBM), 2001 U.S. Dist. LEXIS 1857, at *6 (S.D.N.Y. Feb. 23, 2001) (3 percent of nationwide sales insufficient for substantial solicitation); C.E. Jamieson & Co. v. Willow Labs, Inc., 585 F. Supp. 1410, 1411 (S.D.N.Y. 1984) (5 percent of gross sales "insufficient to meet the 'doing business' test of CPLR § 301 . . . ."). Accordingly, HSI did not conduct enough business in the state to trigger the "solicitation-plus" test, and was

---

Rolls-Royce Motors, 657 F. Supp. at 1046 ("Even prior to Helicopteros, the law in New York was clear that purchases in New York by a foreign defendant corporation of a major share of the merchandise to be sold at its place of business outside the state . . . do not warrant a finding that the defendant was present within the jurisdiction of New York."); LG Adam Textiles, 1980 U.S. Dist. LEXIS 13983, at *6-8 ("[T]he 'business' contemplated by C.P.L.R. § 301 and the New York courts is primarily 'selling' . . . and not 'buying.'"). Therefore, this Court will not consider the purchases made by HSI in 2006. See Rolls-Royce Motors, 657 F. Supp. at 1046 (separating defendant's sales from its purchases and describing plaintiff's attempt to "bolster [defendant]'s sales activities in New York by indiscriminately merging them with [defendant]'s purchasing activities" as reflective of plaintiff's awareness of the "inadequacy of its allegations . . . for the purposes of demonstrating that the corporate defendant was soliciting business in [New York] . . . .").

Additionally, there is a discrepancy between the amount of sales stated in Defendants' moving papers and an Exhibit to Plaintiff's opposition papers which corrects the previously reported volumes of sales relied on in Defendants' papers. See Pl. Br., Ex. A, Ex. 2 to Bogan Deposition. The corrected total amount of sales for the year 2006 is about $2 million lower than that previously reported, with the lower number accounting for about 2.35 percent of the gross sales of HSI for 2006, as opposed to the 3.05 percent previously reported. See id. This discrepancy is of little import because, as explained below, sales that represent less than five percent of a company's overall revenue are not substantial.

therefore not "doing business" in the state in 2006 when this suit was filed.[12]

This Court, therefore, lacks personal jurisdiction over HSI. Because this Court lacks personal jurisdiction over HSI under either Sections 301 or 302, we need not consider whether personal jurisdiction would offend due process.

### D.  Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Defendants moved for a transfer to the District of Connecticut pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)") in the event that the Court decides that it retains jurisdiction.[13] Though Copterline opposed this motion, it informed the Court that, in the event the "Court concludes that HSI is not subject to its personal jurisdiction, Copterline acknowledges that a transfer under § 1406 to the District of Connecticut would be appropriate." Pl. Br. at 14 n.15.

Section 1404(a) authorizes a court to transfer any civil action in which the defendant is subject to personal jurisdiction to any district in which the case may be

---

[12] Copterline also argues that HSI's activity in New York is substantial because HSI "typically routes shipments of parts to its international customers through JFK Airport," and such activity was far greater than its New York sales. Pl.'s Br. at 12. These facts do not affect this Court's opinion. "[V]ague and generalized allegations, such as these, are insufficient to make a prima facie showing of jurisdiction over an out-of-state defendant." Hennigan, 2001 U.S. Dist. LEXIS 1857, at *7. Moreover, the utilization of JFK airport for the delivery of its goods outside of the country, while advantageous to HSI, does not subject HSI to general jurisdiction in New York. See New World, 612 F. Supp. at 171 ("Poole Truck's hauling of freight into, out of, and through New York does not suffice to warrant a finding that Poole Truck is present and doing business in this state. . . . New York is merely a recipient of its services, not a locus of operation.").

Copterline also refers to HSI's visits to New York to participate in training, on-site maintenance, and customer calls as proof that HSI has sufficient contacts with the forum. However, none of these visits is specific to 2006. Rather, Mr. Bogan, HSI's Chief Financial Officer, testified that these visits occurred over the course of several years, starting in January, 2003. See Pl. Br., Ex. A at 22:1-23:19. No evidence has been offered concerning the volume of visits in 2006 alone. These visits, spanning over several years, do not constitute substantial solicitation. See, e.g., Landoil, 918 F.2d at 1045 (concluding that thirteen business trips over a period of eighteen months by employees to New York did not constitute substantial solicitation).

[13] Defendants would be subject to personal jurisdiction in the District of Connecticut where they have their principal places of business.

brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404(a). In comparison, transfer under 28 U.S.C. § 1406(a) ("Section 1406(a)") is permitted as an alternative to dismissal where a district court finds that it lacks jurisdiction over a defendant. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); see Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (holding that Section 1406 permits transfer even where the district court lacks personal jurisdiction).

Because this Court finds that it lacks personal jurisdiction over HSI, and Copterline acknowledges the propriety of such a transfer, the Court transfers the action to the District of Connecticut pursuant to Section 1406(a). See Holey Soles Holdings, Ltd. v. Foam Creations, Inc., 05 Civ. 6893 (MBM), 2006 U.S. Dist. LEXIS 25880, at *27-28 (S.D.N.Y. May 1, 2006) ("A court may transfer a case pursuant to 28 U.S.C. § 1406(a) *sua sponte* even if the defendant moves only to dismiss. Here, defendants moved in the alternative to transfer pursuant to 28 U.S.C. § 1404, and thus a transfer is even more appropriate." (internal citation omitted)). Such transfer would "benefit [P]laintiff, which will avoid the chore of refiling this action," and would not prejudice Defendants because they are located in Connecticut and moved in the alternative to transfer the action there. Id. at *27.

# CONCLUSION

For the foregoing reasons, this Court orders the case to be transferred to the District of Connecticut pursuant to 28 U.S.C. § 1406(a).  The Clerk of Court is therefore directed to transfer the case to the District of Connecticut.  The Court further **DENIES** as moot Plaintiff's motion to stay discovery pending resolution of this motion.

SO ORDERED.

Dated:     Brooklyn, New York
           September 10, 2007

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Plaintiff

Eli R. Mattioli, Esq.
Thelen Reid Brown Raysman & Steiner, LLP
875 Third Avenue
New York, NY 10022

Michael Evan Jaffe, Esq.
Thelen Reid Brown Raysman & Steiner, LLP
701 Eighth Street, N.W.
Washington, D.C. 20001

Counsel for the Defendants

Garrett J. Fitzpatrick, Esq.
Alice Chan, Esq.
Kevin Francis Cook, Esq.
Mendes & Mount
750 7th Avenue, 24th Floor
New York, NY 10019

James W. Hunt, Esq.
Mendes & Mount
445 South Figueroa Street, 38th Floor
Los Angeles, CA 90071